UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

THOMAS C. WALTERS

DEBTOR                                                              CASE NO. 05-55527

POST ROAD PARTNERS LLC                                              PLAINTIFF

VS.                                                                 ADV. NO. 06-5044

THOMAS C. WALTERS                                                   DEFENDANT

**MEMORANDUM OPINION**

This matter has been submitted for decision on the Plaintiff's Motion for Summary Judgment and the Defendant's Response. The Plaintiff commenced this action on February 6, 2006 by filing a Complaint to Determine Dischargeability of Debt pursuant to Bankruptcy Code sections 523(a)(2)(A) and (B) and 523(a)(6). The Defendant's debt to the Plaintiff arises from his personal guaranty on a lease. The Plaintiff seeks $90,000.00 for non-payment of rental installments, $20,880.85 for the value of personal property the Defendant allegedly removed from the Plaintiff's property, and $11,180.40 for non-payment of ad valorem taxes. This court has jurisdiction of this matter pursuant to Judicial Code section 1334(b); it is a core proceeding pursuant to Judicial Code section 157(b)(2)(I). For the reasons set out below, the court will sustain the Plaintiff's Motion for Summary Judgment.

1

1.  <u>Factual and procedural history</u>

The Defendant owned and operated Red Snapper Corporation, d/b/a Furlong's, a seafood restaurant ("Red Snapper"). In February 2004, he approached the Plaintiff about moving the restaurant's location to property the Plaintiff owned, otherwise known as the Coach House, in Lexington. On February 25, 2004, the Defendant executed an Agreement to Lease whereby he agreed to lease the Coach House premises from the Plaintiff under certain terms and conditions, one of which was his providing a current financial statement. The Defendant provided such a financial statement which he prepared for the first quarter of 2003 (according to the Plaintiff), reflecting that he had assets of $1,695,000.00 and liabilities of $424,500.00 for a total net worth of $1,270,500.00.

The Plaintiff states it did some research in regard to the Defendant's home and ran a personal credit report. Some unpaid medical bills were attributed to the Defendant's insurance company's failure to pay. The Plaintiff discerned no other "red flags" that indicated the information the Defendant provided was inaccurate. The Plaintiff did not doubt the accuracy of the financial statement and was satisfied with the Defendant's financial status as portrayed therein.

On March 18, 2004, the Defendant executed a Land and Building Lease ("the Lease") on behalf of Red Snapper in which he unconditionally guaranteed the full payment and performance of all Red Snapper's obligations and responsibilities as set forth in the Lease. In December 2004, Red Snapper abandoned the Coach House, defaulted on the Lease and relinquished possession to the Plaintiff. The Plaintiff

also alleges that the Defendant wrongfully removed various items of its personal property from the premises.

The Defendant filed his Chapter 7 petition in this court on October 14, 2005. On December 6, 2005, he filed an amendment to his schedules which evidences liabilities of $1,348,056.16 and assets of $415,420.00, his liabilities therefore exceeding his assets by some $932,636.00. As stated above, the Plaintiff filed its Complaint on February 6, 2006. The Defendant apparently filed his Answer in his bankruptcy case, but never filed it in this proceeding. The Plaintiff filed its Motion for Summary Judgment on June 2, 2006, supported by the Affidavit of Ben H. Levy, managing member for the Plaintiff ("Levy Affidavit"). A hearing was conducted on June 27, 2006. By the time of the hearing the Defendant had not responded to the Motion for Summary Judgment. The court gave him eight days to respond, or have summary judgment entered for the Plaintiff. The Defendant filed his Response with Affidavit attached on July 5, 2006. The Plaintiff filed a Reply on July 10, 2006, and the matter was then taken under submission.

   2.   <u>Discussion</u>

      a.   <u>The summary judgment standard</u>

Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, provides that summary judgment is appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has observed that

> this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact.
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510 (1986)(emphasis in original).

The summary judgment standard is set out in *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The Sixth Circuit has opined that "[r]ead together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

    b.   <u>Non-dischargeable debt pursuant to section 523(a)(2)(B)</u>

The Plaintiff seeks to have the debt it claims the Defendant owes it declared non-dischargeable pursuant to Bankruptcy Code section 523(a)(2)(B). It makes no argument in regard to section 523(a)(2)(A). In order to except a debt from discharge pursuant to section 523(a)(2)(B), the Plaintiff must demonstrate that the Defendant

obtained money, property, services, or an extension, renewal, or refinancing of credit, by use of a statement in writing that is materially false respecting the Defendant's financial condition, on which the Plaintiff reasonably relied, and that the Defendant caused to be made or published with intent to deceive.  The party objecting to discharge must prove each element by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 660 (1991).

Here the Defendant offered a written statement respecting his financial condition.  The financial statement, a copy of which was attached to the Plaintiff's Complaint as Exhibit B, consists of two typed pages, unsigned and undated, containing the Defendant's name, mailing address, birth date, and Social Security number, and setting out a list of "Assets" and a list of "Debts."  This statement does not indicate the period for which it was prepared, although the Defendant has stated that it was prepared for the last quarter of 2003.  The Defendant has not denied that he offered it to the Plaintiff as a written representation of his financial condition.  The Plaintiff alleges that the financial statement is materially false in that the information in it "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit."  *Insouth Bank v. Michael (In re Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001).

The Plaintiff points to representations made in the financial statement concerning the Defendant's assets which are contradicted by Schedule B - Personal Property filed in his bankruptcy case.  While the financial statement shows a total of $1,340,000.00 in assets attributable to two restaurants (Furlong's in Lexington and another

5

Furlong's in Louisville), six horses, coins, jewelry, and art, Schedule B lists no such assets at the time if the bankruptcy filing. In regard to the restaurants, Red Snapper filed its Chapter 7 petition (Case No. 05-55310) simultaneously with the Defendant's. The Statement of Financial Affairs contained therein states that Furlong's operated at a loss in 2004; Schedule B lists stock in the Louisville restaurant as having no value and notes that the restaurant is operating at a loss. There is no record of what happened to the horses listed as assets on the financial statement. The Defendant testified at a 2004 examination that he sold the coins throughout the year 2004 but had no record of such sales. He further testified that "most of" the jewelry belonged to his then wife, and that "some of" the art belonged to her. (Tr. 2004 Exam., pp. 17-19). He made similar statements in his Affidavit. There are similar discrepancies in the debts listed on the financial statement and the liabilities scheduled in the Defendant's bankruptcy case.

The Defendant contends by way of his Affidavit that the financial statement was correct for the period it was purportedly prepared (the last quarter of 2003), and "not materially inaccurate" when it was offered in February 2004. The Defendant blames the discrepancies alleged by the Plaintiff on his having expended all his resources trying to keep Furlong's going. Without records of transactions, however, or other credible evidence to counter the Plaintiff's allegations, the generalized statements contained in the Affidavit are merely self-serving and insufficient to allow him to prevail over the specific information provided by Plaintiff.

As concerns the Plaintiff's reliance on the financial statement,

it must show that it actually relied on the statement, and that its reliance was "reasonable," a more demanding standard than "justifiable" reliance. *Mester v. Brevard (In re Brevard)*, 200 B.R. 836, 845 (Bankr. E.D. Va. 1996). Levy's Affidavit states that the financial statement affected the Plaintiff's decision to extend the Lease to the Defendant (Levy Aff., ¶3), indicating actual reliance.

As to the requirement of reasonableness, the Plaintiff contends that nothing on the face of the financial statement indicated a problem. Levy's Affidavit relates the research the Plaintiff conducted in regard to the information provided in the financial statement, information that did not raise any obvious red flags (Levy Aff., ¶5). The Plaintiff points out that the Defendant failed to identify the true extent of his interests in the jewelry and art, and further did not indicate on the financial statement that he only had a 6% ownership interest in Louisville Cafe, LLC, the entity doing business as Furlong's in Louisville. The court therefore concludes that there is nothing in the record in this matter which indicates that the Plaintiff's reliance on the information contained in the financial statement was unreasonable.

    c.    <u>Nondischargeable debt pursuant to section 523(a)(6)</u>

A debt may be found to be nondischargeable if it is "for willful and malicious injury to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). Conversion, in Kentucky the wrongful exercise of dominion and control over the property of another, may be considered a willful and malicious injury. *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866 (Bankr. W.D. Ky. 2001). The standard for determining such an injury has been articulated by the

United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998). Only a debt resulting from a "deliberate and intentional injury" will be excepted from discharge under section 523(a)(6). *Id.* at 61, 118 S. Ct. at 977. Further, "[o]nly acts done with the intent to cause injury–and not merely acts done intentionally–can cause willful and malicious injury." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999). The *Markowitz* court went on to say that "unless the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantial certain to result from it, he has not committed a willful and malicious injury as defined under § 523(a)(6)." *Id.* at 464 (internal citation and quotation omitted).

As to how the "willful" and "malicious" prongs of section 523(a)(6) are to be treated:

> The Sixth Circuit has adopted an integrated test. . . . In this Circuit, under *Markowitz*, the creditor must demonstrate that the Debtor either (1) intended to cause injury to the Creditor or to the Creditor's property, or (2) engaged in an intentional act from which the Debtor believed injury would be substantially certain to result. . . .
> . . . .
> [M]any courts have determined, post *Geiger*, that the conversion of a secured Creditor's collateral is willful and malicious when the facts establish that the Debtor had the requisite intent (whether objective or subjective) to injure the Creditor.
> . . . .
> Following *Geiger* and *Markowitz*, courts in the Circuit have likewise found debts non-dischargeable where the Debtor has converted a secured creditor's collateral with either an intent to cause injury or where the Debtor believed there was a substantial certainty of injury. . . .
> . . . .
> Since a Debtor in a § 523(a)(6) case is unlikely to admit that he or she intended to cause injury, or that he or she was substantially certain that injury would result, this state of mind can be established through circumstantial evidence.

8

*In re Sweeney*, 264 B.R. at 871-72 (internal citations omitted). The Plaintiff maintains that the Defendant removed items of personal property from the leased premises, and that he knew such removal was substantially certain to cause injury to the Plaintiff.

In support of its position, the Plaintiff has attached copies of lists of the items in question. Exhibit C to the Plaintiff's Affidavit purports to list the inventory that was on the premises when the Defendant entered into the Lease; this list was attached to the Lease. Exhibit D purports to list the inventory that was unaccounted for as of January 16, 2005, after the premises were abandoned. The Plaintiff points to testimony of the Defendant to the effect that he removed kitchen items and equipment from the restaurant (Tr. 2004 Exam., pp. 36-37). The Defendant's claim that the Plaintiff allowed him to remove these items is unsupported by any documentation. The Defendant also admitted that he knew the list of equipment attached to the Lease was the "personal property" of the Plaintiff (Tr. 2004 Exam., p. 79).

The Plaintiff contends that the Defendant has admitted that he engaged in the intentional act of removing the Plaintiff's property, an action he knew would cause substantial injury to the Plaintiff, and that this "willful and malicious" injury warrants a finding that the debt in regard to the removal of personal is non-dischargeable pursuant to section 523(a)(6). The measure of damages for conversion is the value of the converted property. *See In re Sweeney*, 264 B.R. at 870. The Plaintiff states that the value of the items removed was $20,880.85.

In consideration of all of the foregoing, it is the opinion of

this court that the Plaintiff has carried its burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law that the debt the Defendant owes to it in regard to abandoning the Lease, i.e.,$90,000.00 for non-payment of rental installments, and $11,180.40 for non-payment of ad valorem taxes, is nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(B).  Further, the $20,880.85 debt owed for the value of personal property the Defendant removed from the Plaintiff's property is non-dischargeable pursuant to Bankruptcy Code section 523(a)(6).

     An order in conformity with this opinion will be entered separately.

Copies to:

Emily H. Cowles, Esq.
Dan D. Brock, Jr., Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*William S. Howard*
**Bankruptcy Judge
Dated: Monday, August 28, 2006
(wsh)**